UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EVA TUDINO,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>Defendant. | ) | Case No. 06-CV-2487-BEN (JMA)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 12], (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [DOC. NO. 16], AND (3) REMANDING CASE FOR FURTHER PROCEEDINGS** |

Plaintiff Eva Tudino ("Plaintiff") seeks judicial review of Social Security Commissioner Michael J. Astrue's determination that she is not entitled to disability and supplemental security income ("SSI") benefits. Plaintiff has filed a Motion for Summary Judgment, and Defendant has filed a Cross-Motion for Summary Judgment. For the reasons set forth below, the Court recommends that Plaintiff's motion be **GRANTED IN PART** and **DENIED IN PART**, that Defendant's motion be **GRANTED IN PART** and **DENIED IN PART**, and that the case be remanded for further proceedings.

//

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance and SSI benefits on June 16, 2004, alleging a disability onset date of June 10, 1999. (Admin. R. at 18, 78-80.) Plaintiff's claim was denied initially and again upon reconsideration. (Id. at 27-32, 36-40.) Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Id. at 41.) ALJ Peter J. Valentino, after conducting an administrative hearing on July 25, 2005, determined that Plaintiff was not disabled. (Id. at 17-24.) The Appeals Council for the Social Security Administration declined further review. (Id. at 4-6.) Subsequently, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

Plaintiff was born on June 22, 1960 and was 45 years old at the time of the administrative hearing. (Id. at 78, 325.) She has a fifth grade education. (Id. at 100, 325.) She states that she is "technically" married to John Tudino, but the two have been separated for over 20 years. (Id. at 206.) Plaintiff is not sure if their divorce was ever finalized. (Id.) She currently has a live-in boyfriend who supports her. (Id. at 206, 342.) She has one child, a son, who she gave birth to at age 13. (Id. at 206.) Plaintiff describes her daily activities as eating, doing the dishes, making coffee, watching TV, doing laundry once a week, vacuuming once a week, and sometimes swimming in her pool. (Id. at 118.)

Between 1988 and 2003, Plaintiff worked off and on as a spa attendant for Tubs of San Diego, Inc. ("The Tubs"). (Id. at 96.) As a spa attendant, Plaintiff scrubbed jacuzzis, did laundry,

checked people in and out, cleaned the rooms, and monitored the cash register. (Id. at 96, 328.) Plaintiff initially alleged that she became disabled on June 10, 1999. (Id. at 96.) Around that time, she reduced the number of hours she worked because she kept "getting sick." (Id. at 127.) She stopped working altogether on November 1, 2003. (Id. at 96.)[1] Plaintiff alleges that she is unable to work due to injuries to her hand and ankle, asthma, bronchitis, and arthritis. (Id. at 95.)

## III. MEDICAL EVIDENCE

### A. Scripps Mercy Hospital (October 22, 2000)

Plaintiff went to the Scripps Mercy Hospital emergency department in October 2000 complaining of generalized neck pain. (Id. at 160.) She complained that the pain shot down into her shoulders and was so excruciating that when she stood up she felt anxious and short of breath. (Id.) It was noted that Plaintiff had a past medical history of osteoporosis, and that Plaintiff believed she had arthritis as well. (Id.) Plaintiff was diagnosed with a neck strain. (Id. at 161.)

### B. Scripps Mercy Hospital (February 12, 2003)

Plaintiff went to the Scripps Mercy Hospital emergency department after falling on her right shoulder. (Id. at 148.) X-rays of the right shoulder were negative and Plaintiff was diagnosed with a right shoulder strain. (Id. at 149, 165.)

### C. Grossmont Hospital (November 1-3, 2003)

Plaintiff was admitted into Grossmont Hospital in November 2003 after taking 45 tablets of nortriptyline hydrochloride in an

---

[1] Plaintiff eventually amended her disability onset date to April 14, 2004. (Id. at 18.)

attempt to commit suicide after a "loved one left her." (Id. at 174-76.) Plaintiff tested positive for amphetamines in her urine. (Id. at 174.) A chest X-ray revealed no signs of aspiration. (Id.) Plaintiff's discharge diagnoses included tricyclic antidepressant overdose, amphetamine abuse, depression, and a history of urinary tract infections. (Id.)

**D. Scripps Mercy Hospital (December 25-26, 2003)**

Plaintiff was admitted overnight into Scripps Mercy Hospital in December 2003 after enduring five days of a "hacking cough." (Id. at 179.) The reporting physician thought that there was likely a psychiatric component involved as Plaintiff's cough appeared to be "very self-induced and exacerbated." (Id. at 179-80.) Plaintiff was diagnosed with bronchitis and discharged. (Id. at 179.)

**E. Grossmont Hospital (April - June 2004)**

Plaintiff was admitted into Grossmont Hospital in April 2004 with an ankle fracture after sustaining a twisting injury to her left ankle. (Id. at 185.) After receiving counseling regarding treatment options, Plaintiff elected to undergo open reduction internal fixation. Following that procedure, Plaintiff demonstrated poor progress with physical therapy and with ambulation. (Id.) Plaintiff remained hospitalized for two additional days for mobilization and gait training with crutches. (Id.) Dr. Steven R. Allsing, the operating surgeon, anticipated Plaintiff would need a six week period of time during which she could not put weight on the ankle. (Id. at 191.)

On June 3, 2004, Plaintiff began physical therapy for her ankle. (Id. at 196-97.) On June 21, 2004, Dr. Allsing, during a

follow-up examination, noted that Plaintiff was "doing well" and had minimal discomfort at the fracture site. (Id. at 200.) On June 24, 2004, Plaintiff cancelled all appointments for continued physical therapy because she said she needed to deal with other health issues. (Id.)

**F. Dr. Jaga Nath Glassman, M.D. (August 16, 2004)**

Plaintiff underwent a psychiatric disability evaluation by Dr. Glassman, a board-certified psychiatrist, in August 2004 at the request of the Department of Social Services. (Id. at 206-11.) Plaintiff stated that her physical health kept her from performing even very simple or basic work. (Id. at 207.) She stated that although she had been depressed to some degree because of her physical problems, she did not understand why she would be sent to a psychiatrist for evaluation. (Id.) Plaintiff confirmed that she had a history of methamphetamine abuse, starting at age 19 up to the date of the examination. (Id.)

Dr. Glassman found Plaintiff's thought processes to be coherent, relevant, and goal-directed, and did not find any evidence of psychotic symptoms. (Id. at 209.) Cognitively, Dr. Glassman considered Plaintiff to be of average to low-average intelligence. (Id.) Dr. Glassman reviewed a prior medical report prepared by Dr. Michael A. Jaffe, M.D., who conducted a psychiatric evaluation of Plaintiff in 1994. (Id. at 210.) Dr. Jaffe had diagnosed Plaintiff with Methamphetamine Dependence and Borderline Personality Disorder, and opined that "her stress tolerance seem[ed] poor, but she probably could sustain simple, repetitive, menial work tasks." (Id.) Dr. Glassman agreed with Dr. Jaffe's findings, and stated "that although [Plaintiff]

likely [had] difficulty with stress, she could probably work in a simple job from a psychiatric perspective." (Id. at 211.) Dr. Glassman found that Plaintiff was "largely socially appropriate, was able to follow all directions, and performed fairly well on the cognitive portion of the exam." (Id.)

**G. Dr. Steven E. Gerson (September 15, 2004)**

Dr. Gerson of Seagate Medical Group performed an Internal Medicine Evaluation of Plaintiff at the request of the Department of Social Services in September 2004. (Id. at 223-27.) Plaintiff exhibited mild wheezing, shortness of breath, and coughing spasms. (Id. at 226.) She also displayed tenderness in her left wrist, left ankle, both of her knees, and her left hip. (Id.) Plaintiff's grip strength and fine motor coordination were intact. (Id. at 227.) She walked with a mild to moderate limp. (Id.) Dr. Gerson concluded that Plaintiff was able to lift ten pounds frequently and twenty pounds occasionally. (Id. at 227.) He also believed that Plaintiff could stand, walk, or sit for up to six hours in an eight-hour work day. (Id.)

**H. Dr. Majid Naficy, M.D. (January 12, 2005)**

Dr. Majid Naficy of the Department of Health Services for the County of San Diego conducted a psychiatric assessment of Plaintiff in January 2005. (Id. at 299-302.) Plaintiff explained to Dr. Nacify that she had last worked in November 2003, but since then, her battles with pneumonia, shingles, asthma, osteoporosis, arthritis, back pain, a broken ankle, and a double compound fracture in her hand had prevented her from obtaining employment. (Id. at 300.) She also complained of having persistent feelings of dysphoria (anxiety) and depression.

(Id. at 299.) She denied any current suicidal ideation. (Id. at 300-01.)

Plaintiff admitted being a heavy user of methamphetamines. (Id. at 299.) Plaintiff explained that she had been able to remain sober for two years in the past while incarcerated and on probation, but that when her probation ended, she had relapsed. (Id.) Despite experiencing strong cravings, she stated that she had been clean from illicit drugs for a "brief period" and was trying to stay that way for her boyfriend. (Id.)

Cognitively, Dr. Nacify found that Plaintiff was alert and fully oriented. (Id. at 301.) Dr. Naficy concluded that Plaintiff demonstrated fair insight and judgment and good behavior control with no overt signs of cognitive deficits. (Id.) Dr. Naficy recommended Paxil for Plaintiff's depression and encouraged her to consider residential drug rehabilitation to treat her drug abuse. (Id.) Plaintiff agreed to start a trial of Paxil but was hesitant and resistant to the idea of residential drug rehabilitation. (Id.)

**I. East County Mental Health (January - June 2005)**

Plaintiff obtained treatment at East County Mental Health, associated with the Health and Human Services Agency of the County of San Diego, between January and June 2005. (Id. at 286-98.) Plaintiff received prescriptions for Paxil and Trazodone to help with her depression and with her difficulty sleeping, respectively. (Id. at 289, 291, 295, 298.) Plaintiff was also repeatedly counseled on drug rehabilitation programs. (Id. at 290, 293, 296.) Plaintiff indicated several times that she did not wish to enter any such program. (Id. at 287, 293, 296.) She

also stated that the Paxil and Trazodone were helping her. (Id. at 292, 296.)

**J. Dr. Rakesh Patel, M.D. (February 10, 2005)**

Plaintiff's general practitioner, Dr. Rakesh Patel of Neighborhood Healthcare El Cajon, completed a Physical Residual Functional Capacity Questionnaire at the request of Plaintiff's counsel in February 2005. (Id. at 283-85.) Dr. Patel indicated that Plaintiff's diagnoses included chronic obstructive pulmonary disease (COPD), left hand grip weakness secondary to fracture, and left shoulder tendinitis. (Id. at 283.) Dr. Patel believed that Plaintiff could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift twenty pounds or more. (Id. at 284.) Dr. Patel also noted that Plaintiff could lift nothing with her left upper extremity. (Id.) Dr. Patel indicated that Plaintiff could sit for at least six hours in an eight-hour workday, but that she could only stand or walk about two hours in an eight-hour workday. (Id.) Dr. Patel estimated that Plaintiff would miss three days from work per month due to her physical impairments. (Id. at 285.)[2]

**K. Scripps Mercy Hospital (March 23, 2005)**

Plaintiff went to the Scripps Mercy Hospital emergency department in March 2005 complaining of hyperventilation. (Id. at 311.) Plaintiff was diagnosed with bronchitis, hyperventilation, asthma, anxiety disorder, and hypokalemia (low potassium), and was prescribed antibiotics. (Id. at 313.)

//

[2]Dr. Patel's treatment records between March 2002 and December 2004 are contained within the administrative record. (See id. at 249-76.)

## IV. THE ADMINISTRATIVE HEARING

The ALJ conducted an administrative hearing on July 25, 2005.

**A. Plaintiff's Testimony**

Plaintiff testified that she stopped working at The Tubs in November 2003 because of a series of medical conditions which prevented her from carrying on as a spa attendant. (Id. at 328.) Plaintiff explained that she had contracted shingles for two months, pneumonia for two months, and then broke her left ankle all within the same year. (Id.) Doctors installed a metal plate and screws in Plaintiff's left ankle as a result of her ankle fracture. (Id. at 333.)

With respect to her pulmonary issues, Plaintiff testified of her belief that working with chemicals at The Tubs had led to her bronchitis. (Id. at 329.) Plaintiff explained that after developing double pneumonia a year and a half before, she became aware that she also had asthma. (Id. at 330.) As a result of her asthma, she has difficulty walking and breathing. (Id. at 331.) She uses inhalers and sometimes feels that she is "suffocating." (Id.) Plaintiff testified that she could stand without walking for 15-20 minutes. (Id. at 339.) When asked what would prevent her from standing longer, Plaintiff replied, "I can't breathe." (Id.)

Plaintiff testified that she has had arthritis in both knees for quite some time, and she said that "the Social Security Doctor" (Dr. Gerson) confirmed her belief. (Id. at 332.) Plaintiff believed she could walk, at most, about half a block, but even then would need assistance. (Id. at 339-40.)

Plaintiff testified further that she was in a car accident which caused a double compound fracture in her left wrist, resulting in a loss of feeling in the fingers on her left hand as well as difficulty squeezing and gripping objects with that hand. (Id. at 334.) Plaintiff stated that she could not lift and carry anything with her left arm, and that she could carry ten pounds at most with her right arm "like once and then maybe a little bit later." (Id. at 339.)

Plaintiff also testified that she suffers from depression which keeps her from venturing outside the home. (Id. at 335.) She stated that she was taking Paxil for her depression and Trazodone to help her sleep at night. (Id. at 337.) Plaintiff admitted having a 35-year history of abusing drugs but testified that she had been clean since Christmas 2004. (Id. at 338, 340.)

Plaintiff described her daily activities as doing the dishes, laundry, making the bed, and feeding the cat with her boyfriend. (Id. at 345.) Plaintiff said she occasionally drives to her girlfriend's house. (Id. at 344-45.) Plaintiff expressed that she wants to return to work but she does not feel she can. (Id. at 346-47.)

**B. Medical Expert Testimony**

Medical expert ("ME") witness John R. Morse, M.D. testified at the hearing. (Id. at 350-57.) With respect to Plaintiff's pulmonary impairments, the ME testified that Plaintiff has some element of asthma with intermittent bronchitis or infection which exacerbates it. (Id. at 350-51.) He observed that in between acute attacks or exacerbations, her asthma should be stable. (Id. at 351.) He noted that Plaintiff had not exhibited evidence of asthma during her weekly medical examinations. (Id.) The ME

testified further that Plaintiff has post-traumatic arthritis of her left wrist and right ankle, and mild degenerative changes or arthritis in both knees. (Id.)

The ME testified that based on Plaintiff's post-traumatic arthritic issues and mild knee pain, as well as her history of respiratory problems, she could work in a light capacity, lifting ten pounds frequently and twenty pounds occasionally. (Id. at 353.) The ME believed that Plaintiff could sit or stand for six hours out of an eight-hour workday and walk for six hours out of an eight-hour day. (Id.) The ME stated that Plaintiff has manipulative limitations with respect to her left wrist –- specifically, she could perform handling only occasionally-- along with postural limitations given her weight and the pain in her knees. (Id. at 353-54.) The ME also opined that Plaintiff should avoid fumes and dust which might irritate her asthma. (Id. at 353.)

At this point in the hearing, the ALJ made a finding that Plaintiff has a degree of bronchitis and asthma, and that notwithstanding the ME's testimony that Plaintiff could work in a light capacity, she is reduced to a "sedentary sit-down job" with a sit/stand option. (Id. at 358.)

**C. Vocational Expert Testimony**

Vocational expert ("VE") witness Alan E. Cummings testified at the hearing. The VE provided testimony in response to a series of hypothetical questions posed by the ALJ. The VE testified that Plaintiff could not do her past work as a spa attendant if the ALJ found that Plaintiff's impairments limited her to sedentary, unskilled work, without even moderate exposure to dust fumes or extreme changes in temperature, with a sit/stand

option for two hours of the work day, and only occasional handling with her left hand. (Id. at 358-59.) Under such restrictions, the VE testified that Plaintiff could work as an "inspector" or "order clerk" for which there are 1,000 jobs of each in San Diego County and 40,000 jobs of each nationally. (Id. at 359.) The VE acknowledged that a restriction to the occasional use of Plaintiff's non-dominant hand would significantly reduce the number of sedentary jobs, but stated that both jobs identified above would still be appropriate for Plaintiff. (Id. at 359.) The VE continued that if Plaintiff, in addition to the above restrictions, was limited to non-public simple, repetitive tasks, both jobs would remain appropriate for her to perform. (Id. at 360.) The VE explained that the inspector job has a SVP level of two[3] and consists of monitoring small toy items at a work station, looking for defects. (Id. at 360-61.) Although the job requires frequent handling, it does not require bilateral handling, and thus can be performed with one hand. (Id. at 361.) He also testified that the order clerk position could be performed with one hand. (Id. at 362.)

**V. THE ALJ DECISION**

After considering the record, ALJ Valentino made the following findings:

> . . . .
>
> 2. The claimant has not engaged in substantial gainful activity since April 14, 2004.

---

[3]Specific Vocational Preparation (SVP) indicates "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific jobworker situation." Dictionary of Occupational Titles, app. B. A SVP of 2 requires "[a]nything beyond [a] short demonstration up to and including 1 month." (Id.)

3. The medical evidence establishes that the claimant has severe obstructive pulmonary disease; minimal early degenerative changes of her thoracic spine; is status-post open reduction and internal fixation of a left ankle fracture with good clinical results; a history of methamphetamine dependence; a possible substance-induced mood disorder and a possible borderline personality disorder, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Pursuant to the law of the Ninth Circuit Court of Appeals and Social Security Rulings 96-3p and 96-7p, the undersigned finds that with the exertional and non-exertional limitations identified in Finding No. 5, the claimant would not experience severe or disabling pain or any other disabling symptoms, including shortness of breath, depression or anxiety. This finding is predicated on the reasons identified in the rationale portion of this decision.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting and carrying more than five pounds frequently or 10 pounds occasionally, standing and/or walking for more than two hours in an eight-hour day, requires a sit/stand option allowing for change of position after two hours, and is limited to occasional handling with her left hand. Nonexertionally, the claimant must avoid concentrated exposure to extreme heat and cold, toxic fumes, odors and other respiratory irritants and is precluded from any work at unprotected heights or near dangerous or moving machinery or which would expose her to vibrations [citation omitted].

. . . .

7. The claimant’s residual functional capacity for the full range of sedentary work is reduced by [the] above-cited limitations.

. . . .

11. If the claimant had the exertional capacity for the full range of sedentary work, ... the [Social Security] Regulations ... would direct a conclusion of “not disabled.”

12. Although the claimant’s additional nonexertional limitations do not allow her to perform the full range of sedentary work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could

perform. Examples of such jobs are: inspector and order clerk of which there are 40,000 jobs each in the national economy. This finding is predicated on expert vocational testimony provided at the hearing.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision [citation omitted].

(Id. at 22-23.)

## VI. STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) He or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. § 423(d)(1)(A), (2)(A) (West 2004). An applicant must meet both requirements to be "disabled." Id. Further, the applicant bears the burden of proving that he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

### A. Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). Although the ALJ must assist the applicant in developing a record, the

applicant bears the burden of proof as to the first four steps. Id. If the fifth step is reached, the burden shifts to the Commissioner. Id.

The evaluation process is as follows:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two.
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two, and the evaluation proceeds to step three.
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three, and the evaluation proceeds to step four.
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is therefore not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four, and the evaluation proceeds to the fifth and final step.
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines . . . . If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden,

then the claimant is "disabled" and therefore entitled to disability insurance benefits.

Tackett, 180 F.3d at 1098-99 (footnotes and citations omitted).

**B. Judicial Review**

Sections 205(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Commissioner's final decision should not be disturbed unless: (1) The ALJ's findings of fact are not supported by substantial evidence or (2) the ALJ failed to apply the proper legal standards. See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

The term "substantial evidence" refers to evidence that a reasonable person might accept as adequate to support the ALJ's conclusion, considering the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence means "more than a scintilla but less than a preponderance" of the evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). Even if the ALJ's findings are supported by substantial evidence, they must be set aside if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). The matter may also be remanded to the Social Security Administration for further proceedings. Id.

## VII. DISCUSSION

Plaintiff contends that the ALJ's decision to deny her benefits was based on legal error and was not supported by substantial evidence. (Pl.'s Mem. at 5-9.) Plaintiff makes two arguments: First, that the ALJ's finding that other work exists in significant numbers that Plaintiff can do is not supported by substantial evidence and is based on legal error; and second, that the ALJ's rejection of Plaintiff's subjective complaints is based on legal error and is not supported by substantial evidence. (Id.)

### A. The ALJ Erred By Not Inquiring Whether the VE's Testimony Conflicted with the Dictionary of Occupational Titles

Social Security Ruling ("SSR") 00-4p states that before relying on VE evidence to support a disability determination or decision, the ALJ must inquire whether the VE testimony is consistent with the Dictionary of Occupational Titles ("DOT"). See SSR 00-4p, "Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions," 2000 WL 1898704; see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (holding that an ALJ has an affirmative duty under SSR 00-4p to inquire whether the VE's testimony conflicts with the DOT). When there is an apparent unresolved conflict, the ALJ must inquire, on the record, about the inconsistency, and must obtain a reasonable explanation for the conflict. SSR 00-4p at *2. The failure to

do so constitutes procedural error. Massachi, 486 F.3d 1149, 1153-54 & n.19. Such error is harmless only if there was no conflict or if the VE provided sufficient support for his or her conclusion so as to justify any potential conflicts. Id. at 1154 n.19.

Here, the VE's testimony provided that the jobs of inspector and order clerk were appropriate for a person with a limitation to simple repetitive tasks. (Admin. R. at 360.)[4] Plaintiff argues that the DOT indicates that both jobs, however, have a Reasoning Level of 3 which is beyond the ability to perform simple repetitive tasks. (Pl.'s Mem. at 5.) Plaintiff argues that by failing to ask for a reasonable explanation as to why the VE's testimony conflicted with the DOT, the ALJ's finding that other work exists in significant numbers that Plaintiff can do is not supported by substantial evidence. (Id. at 6-7.)

Defendant argues in response that there is no conflict between the VE's testimony and the DOT. (Def.'s Mem. at 17.) Defendant contends that because both jobs referred to by the VE have SVP levels of 2, indicating that they can be learned in 30 days, they are consistent with unskilled work. (Id. at 18, citing 20 C.F.R. §§ 404.1568(a), 416.968(a).)

By lumping together the concept of unskilled work with the

[4]The Court notes that the ALJ did not expressly limit Plaintiff to "simple repetitive tasks" in his formal findings. (See Admin. R. at 22-23.) Instead, he merely indicated in the "Evaluation of the Evidence" section of his decision that Plaintiff can perform "simple, repetitive tasks consistent with unskilled work." (Id. at 20.) Nonetheless, the Court construes the ALJ's findings as including a limitation to simple repetitive tasks as the ALJ relied on the findings of Dr. Glassman, the examining psychiatrist, who specifically opined that Plaintiff had such a limitation. (Id. at 20, 210-11.) Moreover, the hypotheticals set forth by the ALJ to the VE lead the Court to believe that the ALJ intended to find Plaintiff limited to simple repetitive work. (Id. at 360.)

ability to perform simple repetitive tasks, Defendant has conflated two separate vocational considerations. See, e.g., Meissl v. Barnhart, 403 F.Supp.2d 981, 982-85 (C.D. Cal. 2005). In Meissl, the court stated that "the SVP level in a DOT listing indicating unskilled work [] does not address whether a job entails only simple, repetitive tasks." Id. at 983, citing Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997); Cooper v. Barnhart, 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004); Hall v. Barnhart, 2004 WL 1896969, at *3 (D.Me. Aug. 25, 2004). Rather, "the one vocational consideration directly on point with [a limitation to simple repetitive tasks] is a job's reasoning level score." Meissl, 403 F.Supp.2d at 983.

The DOT defines a position with a reasoning level of 3 as requiring the abilities to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammic form [and to] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, app. C. The Tenth Circuit has determined that a limitation to "simple and routine work tasks" is inconsistent with the demands of level-three reasoning. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). In Hackett, the court directed that the case be remanded to allow the ALJ to address the conflict between the plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs determined appropriate by the VE. Id. Similarly, the court in Estrada v. Barnhart remanded the case to the ALJ for consideration of whether jobs with reasoning levels of 3 exceeded the claimant's limitation to simple interactions and tasks. Estrada v. Barnhart, 417 F.Supp.2d 1299, 1303-04 (M.D. Fla.

2006). Citing Hackett and Estrada, the Central District of California recently determined in an unreported opinion that a reasoning level of three is "inconsistent with a limitation to simple repetitive work." Squier v. Astrue, 2008 WL 2537129, at *5 (C.D. Cal. June 24, 2008).

Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks. See, e.g., Hackett, 395 F.3d at 1176 ("[L]evel-two reasoning appears more consistent with Plaintiff's [residual functional capacity]" to perform "simple and routine work"); Meissl v. Barnhart, 403 F.Supp.2d at 984-85 (finding that plaintiff's ability to perform "simple tasks...that had some element of repetitiveness to them" indicated a reasoning level of two); Flaherty v. Halter, 182 F.Supp.2d 824, 850 (D. Minn. 2001) ("the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, repetitive, concrete, tangible tasks").

In the instant case, the VE testified that Plaintiff could perform the positions of Order Clerk and Inspector. Although the VE did not give a DOT number for the Order Clerk position, both Plaintiff and Defendant agree that he was referring to DOT 209.567-014: Order Clerk, Food and Beverage. See DICOT 209.567-014, 1991 WL 671794. The DOT classifies Order Clerk as sedentary work with a reasoning level of 3 and a SVP of 2. Id. By deeming the Order Clerk position to be appropriate work for Plaintiff, given the imposed limitations set forth in the ALJ's hypotheticals, a conflict existed between the VE's testimony and the DOT because the ability to perform simple repetitive tasks is inconsistent with level-three reasoning. The ALJ was thus

required to inquire about the inconsistency between the VE's testimony and the DOT.  He failed to do so, and in so doing, also failed to ask for a reasonable explanation for the unresolved conflict.  Accordingly, the Court recommends that the case be remanded to allow the ALJ to address the conflict between Plaintiff's limitation to "simple repetitive tasks" and the level-three reasoning required for the Order Clerk position.

With respect to the Inspector job, although the VE described the position as one involving the inspection of small toy items, the DOT number he provided, 669.687-014, corresponds to a Dowel Inspector.  See DICOT 669.687-014, 1991 WL 686074.  Although the DOT classifies Dowel Inspector as sedentary work with a reasoning level of one, which is consistent with the ability to perform simple repetitive tasks, the ALJ never inquired about the discrepancy between the job titles and descriptions provided by the VE versus those set forth in the DOT.  Hence, when the VE testified that a significant number of Inspector positions existed in the national economy, the ALJ could not know whether the VE spoke of the inspector of small toys or the dowel inspector.  Therefore, the ALJ did not have substantial evidence supporting a conclusion that a significant number of Inspector positions existed in the national economy.  Accordingly, the Court recommends that the case be remanded to allow the ALJ to address this conflict.

Plaintiff additionally argues in her Reply that the finding that there are 40,000 inspector jobs and 40,000 order clerk jobs in the national economy is not supported by substantial evidence because the VE testified that a restriction to the occasional use

of Plaintiff's non-dominant hand would "reduce the numbers significantly." (Pl.'s Reply at 2, citing Admin. R. at 359.) The Court normally declines to consider arguments raised for the first time in a reply brief. However, because the Court believes the VE's statement, cited above, was ambiguous, and because the Court is already recommending that the case be remanded, the Court further recommends that the ALJ be directed, upon remand, to obtain clarification from the VE regarding this statement.

**B. The ALJ Did Not Err in Discounting Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ's rejection of her subjective complaints is based on legal error and is not supported by substantial evidence. (Pl.'s Mem. at 7-8.) When considering a claimant's subjective symptom testimony, "if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citations omitted). "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective evidence." Id. Rather, an ALJ may only find a claimant not credible by making specific findings as to credibility and stating clear and convincing reasons to discount the claimant's subjective symptom testimony. Id. An ALJ may consider at least the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness, inconsistencies in

the claimant's testimony or between the claimant's testimony and his conduct, the claimant's daily activities, his work record, and testimony from physicians and third parties regarding the nature, severity, and effect of the symptoms of which the claimant complains. Thomas, 278 F.3d at 958-59 (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).

An ALJ's assessment of pain, severity, and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989). Here, the ALJ set forth the following reasons for rejecting Plaintiff's subjective complaints:

> First, no examining physician has reported any objective, clinical findings which would support a finding that the claimant is totally or permanently disabled. Indeed, an examining physician, Dr. Gerson, concluded that the claimant could perform the full range of even light work.
>
> Second, although the claimant sustained a fracture of her left ankle in April 2004, follow-up x-rays have revealed excellent alignment and fixation of her fracture site. Nor is there any credible evidence that, for a continuous period of at least 12 months, the claimant could not have walked or stood for at least two hours in an eight-hour day, which is all that is necessary for sedentary work. Moreover, the undersigned has conceded that the claimant requires a sit/stand option allowing her to change position after two hours.
>
> Third, while the claimant has a history of asthma, bronchitis and pneumonia, she has not required frequent emergency room treatment or hospitalizations for these complaints. Her pulmonary impairment is not of Listing level severity and, with a preclusion against any exposure to respiratory irritants and extreme heat and or cold, the claimant would not experience any significant work-related limitations.
>
> Fourth, the claimant's activities of daily living include going to the grocery store, doing light household chores, and swimming in a pool [citation

omitted]. At the hearing, the claimant reported at least occasional driving of an automobile and actively seeking employment requiring a sedentary level of exertion.

Fifth, although the claimant is taking Paxil and Trazodone, which are psychotropic medications, she is not receiving any mental health treatment at the present time. Nor has she had any mental health treatment in the past. She has never had any psychiatric hospitalizations, except for brief treatment following an attempted overdose in November 2003.

Sixth, an examining psychiatrist, Dr. Glassman, concluded that the claimant can perform unskilled work, a finding concurred in by another physician, Dr. Jaffe [citation omitted].

(Id. at 20-21.)

With respect to the ALJ's first finding, the record demonstrates that no examining physician reported any objective, clinical findings indicating that Plaintiff is totally or permanently disabled. Dr. Gerson, Dr. Glassman, and Dr. Jaffe all opined that Plaintiff was capable of performing work. (Admin. R. at 227, 210-11.) Moreover, the Plaintiff's own primary care physician, Dr. Patel, implied that Plaintiff could perform sedentary work. (See id. at 283-85.) An ALJ may permissibly rely on examining physicians' opinions regarding whether the claimant is disabled to discredit excessive pain allegations. See Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995). The Court thus finds this constitutes a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

With respect to the ALJ's second finding, the Court agrees that no credible evidence exists to show Plaintiff could not walk

or stand for at least two hours in an eight-hour work day. While Plaintiff's testimony implies that she could not walk or stand for this amount of time (see Admin. R. at 339-40), evidence from the medical records contradicts this assertion. The record shows that Plaintiff experienced excellent alignment and fixation in her fractured ankle. (Id. at 199.) Furthermore, Dr. Gerson and Dr. Patel both concluded that Plaintiff could stand and walk for up to 6 hours in an 8 hour workday. (Id. at 227, 284.)

With respect to the ALJ's third finding, the record demonstrates that Plaintiff's pulmonary impairments have not required frequent emergency room treatment or hospitalizations. According to the record, the first time Plaintiff went to the hospital for a pulmonary issue was December 2003 for a "hacking cough," and the reporting physician noted the condition was "very self-induced and exacerbated." (Id. at 179-80.) Fifteen months later, Plaintiff went to the hospital complaining of hyperventilation. (Id. at 311.) Although the record contains evidence of other doctor visits in 2004 regarding pulmonary complaints, it appears that only conservative treatment was necessary. (Id. at 251-52, 261-62.) An ALJ may properly consider whether a plaintiff has only required minimal medical treatment to discredit his or her allegations of disabling pain. See Williams v. Bowen, 790 F.2d 713, 715 (8th Cir. 1986); see also Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (stating that an ALJ is permitted to draw rational inferences from a plaintiff's treatment history).

With respect to the ALJ's fourth finding, the Court finds that the ALJ's rejection of Plaintiff's excess complaints based

on her daily activities (going to the grocery store, doing light household chores, swimming in a pool, occasionally driving, and actively seeking out employment) is not supported by substantial evidence. Plaintiff admits going to the grocery store only <u>once a week</u>, doing light household chores <u>once a week</u>, and swimming at her pool <u>sometimes</u>. (<u>Id.</u> at 118-25 [emphases added].) Plaintiff testified that she occasionally drives and has actively sought out employment, but there is no evidence she performs these activities daily. (<u>See</u> <u>id.</u> at 343-47.) In fact, the only activity Plaintiff seems to perform daily is watching television. (<u>Id.</u> at 122.) More importantly, however, in order to discredit Plaintiff's excess complaints based on evidence of daily activities, the ALJ must find that Plaintiff is able to spend a substantial part of the day engaged in pursuits that involve physical functions that are transferable to a work setting. <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990). While the activities Plaintiff performs do require a sedentary level of exertion, the ALJ did not make the requisite specific findings concerning the transferability of Plaintiff's activities of daily living to her ability to perform work. Thus, the fourth reason proffered by the ALJ to discredit Plaintiff's subjective symptom testimony does not constitute a clear and convincing reason supported by substantial evidence.

Substantial evidence also does not support the ALJ's fifth finding that Plaintiff has not had any mental health treatment in the past. Plaintiff obtained treatment for depression with East County Mental Health from January through June 2005. (<u>See</u> Admin. R. at 286-98.) Furthermore, although discounted as a "brief

treatment," Plaintiff was put on a 72 hour hold by the psychiatric evaluation team at Grossmont Hospital following her attempted suicide in 2003. (Id. at 21, 174.)

With respect to the ALJ's sixth finding, Dr. Glassman and Dr. Jaffe clearly concluded that Plaintiff can perform unskilled work. Dr. Glassman opined that Plaintiff displayed no evidence of psychotic symptoms, and he agreed with Dr. Jaffe's findings that Plaintiff could perform simple work from a psychiatric standpoint. (Id. at 209-11.) As set forth above, it is permissible for an ALJ to rely on an examining physician's opinion that a claimant could perform sedentary work to discredit an allegation of excessive pain. Moncada, 60 F.3d at 524.

Notwithstanding the Court's finding that two of the ALJ's six findings were insufficient to discredit Plaintiff's subjective complaints, the Court finds that the ALJ otherwise articulated clear and convincing reasons, supported by the record, to discount the Plaintiff's subjective symptom testimony. Contrary to Plaintiff's contention that the ALJ merely discounted her credibility in general, the ALJ proffered several permissible and accurate reasons why he discounted Plaintiff's excess complaints. "Where ... the ALJ has made specific findings justifying a decision to disbelieve an allegation of excessive pain, and those findings are supported by substantial evidence in the record, [the Court's] role is not to second-guess that decision." Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

## VIII. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment should be **GRANTED IN PART** and **DENIED IN PART**,

Defendant's Cross-Motion for Summary Judgment should be **GRANTED IN PART** and **DENIED IN PART**, and the case should be remanded for further proceedings.

This report and recommendation will be submitted to the Honorable Roger T. Benitez, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **August 25, 2008**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **September 8, 2008**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: August 6, 2008

Jan M. Adler
U.S. Magistrate Judge